Our next case for argument is 22-2213 Smith v. McDonough. Ms. Andrews, please proceed. Ms. Andrews Good morning. May it please the court, my name is Elizabeth Andrews and I'm here this morning on behalf of claimant and appellant, Radio Man second class Gregory Smith. I'd also like to note for the court that the other claimant and appellant in this case is Ms. Carolyn Clark. She is the widow of Corporal Roosevelt Clark and she is not my client. She has needed the balance of her time for today's purposes to my client. So really most of my remarks will pertain to them both but if the panel has questions specifically about her I will do my best to answer. I'm familiar but technically not here as her advocate. The backlog of veterans benefits determinations was not created by this court. And this court probably... Counsel, we know the problem. We only have jurisdiction over decisions. We have at least two cases, Maggott and Patrick, that say a decision is a decision on the merits. You get the benefits or you don't get the benefits. And this case doesn't provide that kind of a decision. It was a remand, right? What Maggott and Kirkpatrick and Skor all say is that a remand is interlocutory and so cannot be appealed. The difference here is that the denial of the waiver motion, particularly in Mr. Smith's case, in his view is going to elicit facts that are adverse to him. And he has a statutory right to waive that and didn't get it, didn't get to do it. And if that is allowed to proceed without him being able to challenge that, there will be no going back if those adverse facts come out. Ms. Clark's slightly different. She just wants to hurry things along, which we all do. But I think Mr. Smith is in, his case shows most importantly why that denial of a waiver should be treated collaterally as something independently appealable. I mean, your problem is, as Judge Lurie points out, that the cases seem to be directly contrary to your position. Why isn't the remedy if there is one by mandamus? On the theory that this remand is unduly delaying the resolution of the claim and because the veterans don't want the remand to occur. Isn't that the proper procedural vehicle to bring this issue up? Two reasons, two responses to that, Your Honor. First of all, mandamus is not a right. We are looking for a right to appeal. Second of all, it's not just about delay, as I mentioned. It's about eliciting adverse facts that could be determinative to the outcome of Mr. Smith's ultimate case. And look, Maggott and Kirkpatrick and Skor, the language of them says what it says. However, none of them involved a denial of a waiver motion. The procedural setting in them is not the same. They analyzed remand orders and whether those remand orders granted or denied benefits, which they didn't, this is under the legacy system. I mean, respectfully, your argument that those two cases weren't exactly the same motion we made comes up short when those two cases articulated a broad rule of law, which is it has to be a final decision on the merits. If it were otherwise, then we would have to one by one decide every single denial of every single motion on appeal. We'd have to, a motion for extension of time, a motion for more pages, a motion for whatever. You could say my client's prejudice, we didn't get more pages. My client's prejudice, we didn't get more time. I understand those things are not as serious a prejudice as people are going to suffer in this particular case. But there's a reason that precedent exists. And when we have precedent that says it has to be the denial of a motion or a decision that affects the merits, as an appellate court, we have no choice but to follow that. That's the concept of precedent. So I don't think that you're saying, well, this is a different kind of motion than those motions. It's very effective when the sweep of the decision in those cases is very broad. It is, but the procedural setting is different. I do understand Your Honor's slippery slope concern, and we wrestled with that a lot on our side. But the distinction that the court can make, the court could make a ruling very narrow to denial of waiver motions in terms of determining what's appealable. But we can't because we've got two precedent that says we can only consider final decisions when they go to the merits. So we can't. There's no way. Even if I really wanted to do, if I was 100% on board wanting to do what you're asking for, I can't. I mean, I'm bound by law, and precedent is law. So, I mean, you can challenge this with the inmate court. Precedent is law, Your Honor. But I would just point out that the procedural setting is different. I understand the broad principles of law that those cases are articulating. But none of them involved a situation where the interim order should be a final order in my view, but we'll call it interim order. None of them was going to be outcome determinative. It's one thing to say, well, I need more pages, or I'll lose, or something like that. But eliciting adverse facts, that's a very important distinction. That was not the case with the interim orders being considered in those other three cases. I mentioned Maggott and Kirkpatrick and Skor. Remand is a legitimate process in theory, and it certainly helps a lot of people, but it can mean being sent into the wilderness for a long time. And as I've mentioned many times, in Mr. Smith's considered view, it may even elicit facts that will make him lose. And this court's interpretation of the finality requirements in the two relevant statutes, 7252 and 7266, it does need to be informed by those kinds of considerations. If the court doesn't let itself be informed by those considerations, the court's really not going to effectuate the statute's intent, which is to eliminate the merry-go-round, just like any interlocutory appeal statute. We're trying to waive the merry-go-round. And in the Axon case, Justice Kagan said for a unanimous court, you've got to look at the interaction between the alleged injury and the timing of reveal. If I understood your argument earlier, it was in part that remand might turn up facts unfavorable to, I think, Mr. Smith, and that suggests that you want the case decided on less than all the relevant evidence, which doesn't seem like a very good idea in terms of justice. Let's talk about Mr. Smith's exact facts. May I tease that out a little bit, Your Honor? He's got this offset of voluntary separation incentive pay. And essentially, he got incentive pay to quit the military early, and then the VA essentially deducted that from his disability benefits much later in time. And what the board wanted more information for is they wanted a fact-finding on the income tax, whether he paid income tax on that essentially severance payment or not on his SSB. I don't know if he did or didn't. Honestly, it was a long time ago. It's not clear whether he did or didn't. You know, we have no jurisdiction over facts at all. That's right. You are getting deep into facts. The ultimate question is whether we have jurisdiction over the appeal at all. That's right. It goes to finality is why I was getting into these facts. And the question of finality is what is before this court. I just want to quote again from something in our reply brief, which is that when it becomes impossible to remedy, I'm quoting Justice Kagan here, when it becomes impossible to remedy the party's harm once the proceeding is over, which is when appellate review kicks in, a proceeding that has already happened cannot be undone. That matters for both the time considerations and the adverse facts that we were concerned about, which may or may not be elicited, but they could be. And he does have a statutory right to waive that. I do want to reserve five minutes for rebuttals, so I will reserve that time. Okay, Ms. Andrews. That's great. Mr. Carhart. Mr. Carhart. May it please the Court. Under this Court's precedent, the Board's decision that gives rise to jurisdiction under Section 7252 must either grant or deny a benefits request. Here, the Board did not grant or deny a benefits request, so the Board did not issue a decision under Section 7252 that the Veterans Court could permissibly review. The Veterans Court's decision should be affirmed. Is there a potential remedy by mandamus on the theory that the remand is unduly delaying the proceeding? Yes, Your Honor, there is. Not conceding that the facts here would give rise to that remedy, but yes, this Court's set forth the standard for the Veterans Court to apply to those sorts of petitions, and the claimants here have chosen not to pursue that route. I want to address a couple points that have been, of course, discussed in this Court's precedent, but also to address a couple points that Ms. Andrews made in her argument. First, on Smith, the idea that the remand might elicit adverse facts. It's important to emphasize that Smith is a case about an offset. The VA is duty-bound under 10 U.S.C. 1174 to calculate offsets under certain circumstances, and the Board is acting consistent with that duty here. I'm not sure exactly what bad facts that Ms. Andrews was referring to, but generally speaking, the Board has to— I mean, I can guess. She's worried that federal income tax was not, in fact, withheld, and therefore the offset's going to be bigger, and he's going to have to pay more back. Pay more. Right. That's what I'm guessing. I mean, she said she doesn't know. I take her at her word. But why would he want to send it back for that purpose? So if that's the case, I mean, I think he's probably free to concede that point for evidentiary purposes. Why would he want to concede it? He doesn't want to concede it. He'd rather you have to prove it or not prove it, but whatever. He doesn't want to give the money back. The Board has a duty to follow the procedure set forth in the statute, and that's what the Board was doing here. It was remanding so that it could gather facts that it found necessary. But can't—by statute, can't a veteran waive the duty to assist? So I think there's a real question about that, A. B—and I'll get back to that. B, I don't think— Don't be too quick because your concept that there's a question about it probably doesn't fully flesh it out for me. I understand. Okay, good. But I also want to emphasize that Smith is not really—I don't think the VA was remanding under the duty to assist. I think it was remanding to carry out its duties under 10 U.S.C. 1174. What about Clark? So Clark is a more typical duty to assist case. So a couple responses. First of all, there is a statutory duty under 5103A to remand under certain circumstances to correct duty to assist errors. That's 5103 big A subsection F. I'm not aware of any Board guidance or any Veterans Court guidance that specifically resolves this question of whether the Board even has authority to essentially allow the veteran to waive this duty to assist, notwithstanding the statutory duty under 5103A F. There's also a similar regulation that similarly requires remand to correct errors under certain circumstances. So that's one question. The second question— Well, one thing that is a little concerning is you started by conceding that they could at least request mandamus under the notion that remanding will potentially cause a dramatic long amount of time. Like imagine a veteran who has—we're not in this fact pattern, but imagine a veteran who is very unwell and imminently could die and will therefore lose his benefits because, you know, that's the big thing that drives me crazy in these cases is Veterans can pursue their benefits and the VA can sometimes take years and years and years to process them. They don't get those benefits. And if the veteran happens to die before they finally decide he was worthy of benefits or she was worthy of benefits, benefits go up in smoke. And so, you know, you can imagine a scenario in which they say, okay, I don't want your assistance. Your assistance will mean I don't get benefits because I might die in the meantime and I actually just need to decide my case. And I think the facts presented are adequate for you to do so. So what—you know, how—you understand where I'm going. This is my concern. Yes, I understand. I continue to maintain that mandamus is a remedy for undue delay under appropriate circumstances. There is no doubt about that under this Court's precedent. There's a separate question. But if the mandamus in this case were, no, I'm waiving my right to assistance because my death is imminent and I'm going to lose these benefits, otherwise the whole thing is pointless. You've taken so long. You've dragged your feet for five years. No, don't send it back to assist. If your position is that by statute the VA has no choice but to assist, if your position is the statute does not afford waiver, then how is mandamus actually a remedy under those circumstances? How could it ever be a remedy? Well, the mandamus theory wouldn't be about the remand. It would be about undue delay. So even if remand— Yes, but can we cause the Board to waive a statutory obligation pursuant to undue delay theories? Of course not. So you've created a scenario where mandamus is not legally possible. I don't think I agree with that, Your Honor, because I think the way that remand is done still can be reviewed. And if the effect of a remand is to cause undue delay under the well-established standards governing mandamus, then the claimants would have a remedy. Again, I don't think the Board— If they would be in the context of mandamus, they would be arguing we have a right to waive the remand. And in the course of the mandamus proceeding, the Court would determine whether, in fact, there is such a right to waive the remand or not, correct? That's right. That's right. So that would be one question. And another question would be even if there is a— whether or not there is or is not a right to waive the remand, undue delay is still a cause for granting a mandamus petition. So if there's been undue delay, whether it's the product of remand or something else, that's a viable theory. It doesn't seem— That last part doesn't seem right if we were to conclude that they don't have a right to waive remand. If they don't have a right to waive— not waive remand, but waive the duty to assist, then how could we ever— If you're right, there's no right to waive the duty to assist, how do we ever grant mandamus for undue delay? I think you would say that even if the remand was required, it was done in a manner that caused undue delay. So remands can take a week or they can take a year or they can take 10 years. And there might be a difference depending on how long the remand takes. If we can't allow them to waive the duty to assist, we can just say you're taking too long with the duty to assist. We would not be granting the mandamus they request, which is not having it remanded at all. You're proposing a totally different mandamus. I think the theory would be undue delay. That's right. But if you're wrong and they have a right to waive and there were a mandamus proceeding, we would say, yes, you should issue a writ of mandamus because they had a right to waive and, therefore, they win. The question of whether they have a right to— The question of the right to waive could be determined in the mandamus proceeding, right? It could be, yes. I think it could be. Now, I just want to make one point, though. Even assuming that the board has authority to grant these motions under certain circumstances, it doesn't follow that they always have to grant a motion to waive. There might be circumstances— Like the Mr. Smith circumstances, but not necessarily the Mrs. Clark circumstances. Not necessarily, but I do want to make one point about the Mrs. Clark's case, too, which is that if you look at her submission to the board, her arguments are factual. She's arguing about—it's a question about service connection for Mr. Clark's death, whether it was connected to his frostbite that he incurred in service or some other cause of heart disease that led him to pass away. What Mrs. Clark is asking for the board to do is to basically forget— The board's view is— The board's trying to help Mrs. Clark, I think. It's a fair reading of the board's decision. It's saying, yes, there's this independent medical examination that said there's no service connection, but that examination from the VA wasn't precise enough. We want a more precise examination that actually addresses the issues that need to be addressed here. From the board's perspective, they do not have the information they need to decide whether to grant or deny her claim. If the board had said, okay, we're not going to remand. We'll send it straight up to the veterans court. The veterans court is reviewing for clear air, presumably, some of these fact-specific issues about service connection. I think there are some real concerns about how practically that would actually work. That's why I wanted to draw a distinction between, first, the question of whether there's authority, and, second, how that authority would apply in a given case. All of this is very much downstream from the jurisdictional issue that disposes of this case under 7252, but I agree, Judge Dyke, that some of this could be raised in a mandamus petition, and some of these issues could be resolved in that. Counsel, let me ask a point of clarification. I may have misspoke moments ago when I said the question is whether we have jurisdiction. Is it your view that we clearly have jurisdiction to review the CAV's... the C's decision? The issue is whether they had jurisdiction of the appeal to that court. Is that basically correct? Precisely, yes, Judge Lurie. This court has jurisdiction. In our view, it should exercise that jurisdiction to affirm the Veterans Court's decision, which was based on the premise that the Veterans Court didn't have jurisdiction under 7252. I just want to briefly address the Axon case that the claimants rely on in their reply brief. You know, under Axon, it's not a case about interlocutory review at all. It's a case about forum selection and administrative proceedings, and the court's ruling was really based upon this very distinctive type of harm that results from being subject to an unconstitutional proceeding. The court's opinion goes out of its way to distinguish just protracted agency proceedings in and of themselves as giving rise to interlocutory review. The court did not want the case to be read in that way. So we think that case is in a positive. I'm happy to answer any other questions the court might have. If there are none, we ask the court to affirm. Thank you. All right, we have some rebuttal time. Thank you. I'd like to address, first of all, Your Honor's clear concern about this mandamus option, this route. A couple points to make in rebuttal there. First of all, as I said in the opening, courts don't have to grant mandamus. If you have a right to appeal, then the court does have to take that. And that's, to me, the whole ballgame as to why mandamus is not sufficient. Second of all, the standard for mandamus and granting a mandamus is higher than it would be if you just directly appealed. So while it would be better than nothing, I don't deny that, it's not adequate to ensure that you get your rights to get these issues heard. I also do want to address Axon just a little bit more. I'm not standing here arguing it's binding authority. It's a different context altogether. But it does show how the Supreme Court is thinking about these issues in the real world. And I just want to emphasize that it's the interaction between the alleged injury and the timing of review. That is clearly important to the Supreme Court. And arguably, it's more important when you have a catastrophically injured veteran than when you have an accounting firm who doesn't think the SEC should be allowed to exist. It's more compelling in our case. Considerations about a proceeding that's already happened cannot be undone. And I understand the panel's concerns about finality and how you can't go beyond MAG-IT and its general language. But I would just urge the Court to consider that your interpretation of finality should be informed by the real world. And as Chief Judge Moore was saying, Mr. Smith may not be catastrophically injured, but somebody affected by this decision will be catastrophically injured. And so we need to make our decisions with that person in mind, too. And I understand that mandamus is a way to help that person, that theoretical person, but it's not good enough, is the bottom line in our view. With that, if your Honor has some more questions about these issues, I would love to address them. Okay. Thank you, Ms. Andrews. I thank both counsel. This case is taken under submission. Thank you.